May it please the court, Department of Justice Attorney James Spears and also Assistant United States Attorney Tom Mulick. My name is Harlan Kimura and I represent Mr. Fouini Charles Toilolo. In the District Court's omnibus order regarding or denying the various motions which was at docket 1826 at page 52, it found that the government's conduct could be outrageous. According to the current case, outrageous means the government's actions was fraudulent, I'm sorry, flagrant, willful, and in bad faith in regards to the Brady violations of Mr. Toilolo. There was also prejudice as found by the District Court in those motions. However, the prejudice according to the District Court was not severe enough to warrant a dismissal. Now the... Well no, I thought the District Court said that the conduct wasn't sufficiently flagrant or willful, might be characterized as grossly negligent, but that it wasn't willful in the sense required for a dismissal. Your Honor, the the order seems a bit inconsistent because at one point the District Court order does say it was outrageous conduct, but yet in the next sentence it said, well but it wasn't flagrant, willful, or in bad faith. Right, which is the the legal test and the court found that it wasn't satisfied here. That's a factual finding that we review only for clear error. And that's probably why the District Court did not dismiss the indictment. However, the finding of outrageous conduct carried on through the order denying Mr. Toilolo's sixth motion to dismiss, as well as the order denying Mr. Toilolo's motion to exclude the testimony and the exhibits of Mr. Amaku Malapiai. Now in the order denying the motion to exclude the testimony of Mr. Malapiai, the District Court found that, or the District Court concluded that the prejudice that was already found was not cured. But that finding by the District Court is clearly wrong because the issue in the motion to exclude the testimony of Mr. Malapiai was because of the outrageous conduct of the government. Not only in the withholding and suppressing of hundreds of hours of the Malapiai wiretaps. From a different case more than 10 years earlier. Yes, Your Honor. It was more than 10 years ago. There were hundreds of hours. But the important part about this is there was prejudice. The reason why there was prejudice is because this case is an informant driven case. The credibility and the testimony of all the co-defendants who pled guilty and testified against Mr. Toilolo were crucial to this case. It doesn't matter that the court recognized that all wasn't well from the government's perspective, but the court gave an alternate remedy. Now once the court does that, don't you have a little problem telling us that it's not sufficient? Okay, well, Your Honor, the alternate remedy would be when there is the issue regarding utilization of the supervisory powers to dismiss the indictment, then the district court could... No doubt the court could have, on what it considered a proper record, dismissed. This court didn't dismiss, but it had used some pretty strong language. It was sloppy. The government was sloppy. You know the language as well as I do, I suspect. And that was really related to the first five motions to dismiss. That wasn't really related to the sixth motion to dismiss that Mr. Toilolo filed or the motion to exclude the testimony of Malapai. Because in the order denying the sixth motion to dismiss, the two points raised by the testimony or the evidence that was suppressed could be used during the first trial and the result would be different. We would take issue with that because, as I said before, this is an informant-driven case. Hold on a second. You've got me confused. Are we talking about the sixth motion was based just on the failure to disclose the wiretaps from 2001 to 2002, right? Primarily, yes. However, in a footnote, I did incorporate all the other motions. But essentially you're right. That was the only new thing that you had to add to the mix, right? You're right. So, Your Honor, the thrust of the sixth motion was because of the hundreds of hours of multi-wiretaps that were not disclosed. And the egregious conduct about that is that when, in the first trial on January 30th, the government at the 11th hour said, we're not going to call Mr. Malapai. We asked why. One of the co-defendant attorneys asked, is it a Giglio-Brady issue? And the government said, we're not prepared to discuss it on the record. The next day, at a sealed hearing, they said it was because we didn't disclose text messages, the actual text messages of the Giglio of Mr. Malapai. So, in other words, at that point, they knew that the cumulative argument they made all along during the first trial wouldn't carry the day. So... Go ahead. Oh, I'm sorry. No, no. The problem that you have, and maybe you can overcome it, there's no doubt that there was misconduct or something went wrong the government didn't do, but the court acknowledged all that, and then the court gave a remedy. You think the only remedy is dismissal, but we have to look at it. And how do you think the question before us is, do we decide whether dismissal was sufficient or whether the only remedy you can have is dismissal indictment? Our position, Your Honor, is that the appropriate remedy would be dismissal, because you cannot turn the clock back. You cannot have the suppressed evidence utilized at the first trial, where there was all these sanctions against the government, the disclosure of misconduct told to the jury. The prejudice and the damage to Mr. Toilolo because of the first trial and the suppression of the 100 hours of Malak Pai Waiata was irreparable. So dismissal, we would argue, is the only remedy. However, as an alternative, if the court is inclined to find some lesser remedy would be more appropriate. That was the basis for our motion to exclude the testimony of Malak Pai for the second trial, because we were saying that if you're not going to be dismissing the charges. He didn't testify in the first trial. That's right, Your Honor. He didn't testify in the first trial because the government said at the sealed hearing it was because of these text messages that we didn't produce. We found, based upon subsequent events though, that statement probably is not true, because the district... Is that what the court held? No, the district court only asked, is that the only reason why you're not calling Mr. Malak Pai? What you think is good for law, but for facts, we have to rely on the fact-finding process. So unless it's been before the district court, it's hard for us to make a relationship. If you didn't bring it before the district court for a decision, it's hard for us to say whether the discourse should be reversed or not, or whether the district court abused his discretion. I'm sorry, in relation to the dismissal? Are we talking about the sealed hearing? You said we believe, and I'm just saying, we believe isn't going to help us very much unless it's been before the district court and the district court's made a finding. Yes, Your Honor, I would agree that yes, there would probably need to be a finding, but just looking at the circumstantial evidence and what the government has done subsequent to the first trial, and the disclosure of hundreds of hours of Malak Pai wiretaps should indicate that not only was the outrageous conduct continuing, but there was also prejudice, because as I said before, this was an informant-driven case. Mr. Malak Pai was one of the two star witnesses, and he, the jiggle on him would be very crucial, and the way that we would have approached the first trial would have been different if we knew there were these hundreds of hours, because we wouldn't have argued that, well, it was just the... Not at the first trial, that don't, you can't make that argument because he didn't testify, so even if you didn't testify at the first trial, it would have been of no use. Your Honor, I'm sorry, Your Honor, if we knew there were these hundreds of hours, we had a chance to look at them. We would have definitely separately subpoenaed Mr. Malak Pai, and we would have fashioned our case differently. That is the prejudice that Mr. Toilolo suffered, which is irreparable. Your Honor, I notice that my time is up. May I still come back for a minute on the case? Of course. We'll give you a chance to respond to the government. Let me ask one question, if you wouldn't mind. I always look back to how you set up, in your brief, what the issue is before us, and you have before us the district court heard in denying the motion to exclude the witness's testimony and recordings, and then it says it should have been disclosed before the first trial, rather than insufficient time for the second trial. So the issue before us is that they were late in giving you the information? Is that the issue we're deciding? Your Honor, the issue in regards to the motion to exclude, the issue is whether they should have been prevented because of the outrageous conduct. Well, what I'm trying to do is see what we have to decide, and as our rules require, the appellate has to state what the issue is that is before us, so that then we can look and see if the brief substantiates that. And the issue before us, if I understand it, is that they were tardy in giving you information, and therefore there should have been a dismissal of the case against your client. That's what your blue brief says. Now, when the district court makes that decision, what is our standard of review? The standard of review would be de novo. Why would it be de novo? Well, if it's in regards to resulting in a due process violation. If, however, it was a dismissal based upon the supervisory powers where there would be substantial prejudice and no other remedy or lesser remedy would be available, yes, your Honor, it would be abuse of discretion. Okay, thank you. Thank you. Thank you. Let's hear from the court. James Pierce for the United States. Maybe you could have in mind the question I just asked. Counsel, generally we review these motions for abuse of discretion, but he suggested de novo. What is the position of the government? As we state in our brief, we believe it's an abuse of discretion standard of review for an evidentiary ruling. And as Mr. Kimura has just pointed out, essentially the exclusion motion was derivative of the sixth motion to dismiss, the motion to dismiss based on the wiretap recordings, and asked the district court, well, if you're not going to dismiss, would you consider this other remedy? It's not really a true evidentiary motion, and the district court, in ruling on it, properly treated it, in fact, as an evidentiary motion. It said, well, you're asking me to exclude the testimony of Mal P.I. from the second trial, from 2010 and 2011, entirely different from the wiretap recordings. And the district court said, well, listen, these were admitted at the first trial without Mal P.I. as a sponsoring witness, no challenge to that evidentiary ruling. And to the extent the argument is a prejudice-based one, well, the defendant has had now these wiretap recordings from 2001 and 2002 for at least four months at this point. So really there's no prejudice as to, that should be remedied as to the Now, the other core question here is really whether the district court was correct in finding that the disclosure of the Mal P.I. 2001 and 2002 recordings, four months before the retrial, warranted dismissal. And the district court's conclusion that that disclosure was not so outrageous or shocking as to warrant correct. For one thing, the standard here is very, very high. We're not talking about the supervisory powers standard that the defendant talks about for the first five, which looks at the flagrancy of the government conduct, the possibility of substantial prejudice, and alternative remedies. Now, I just want to be clear, there were a lot of mistakes that the government made in this case, and there were a lot of discovery errors. And a panel of this court has looked at that, and looked at the district court's handling of that. And I don't want to say blessed, because that's certainly not an accurate description. But it's... No, it certainly wouldn't be. But found ultimately that the district court's careful imposition of an array of sanctions cured the prejudice and served as an appropriate alternative set of remedies for, in response to the government's misconduct. With respect to the Malapii 2001 and 2002 recordings, the argument, as I understand it, is based on the possibility that the government had a sort of a scheme to hide that it knew about those recordings during the first trial, so as to avoid having the already admitted 2010 and 2011 conversations between the defendant and Malapii excluded. Now, as Judge Wallace pointed out, there's simply nothing in the record to bear that out. And in fact, the reason for the belated disclosure of those, as the government pointed out in both a hearing between the two trials, as well as in its response to the exclusion motion, was that after the discovery debacle of the first trial, the government redoubled its efforts and said, is there anything out there that we haven't disclosed already that we absolutely have to make sure that we disclose? Recalled those wiretap recordings from 2001, 2002. Didn't believe that it had a discovery obligation. Thought that this was cumulative to the large amounts of discovery already produced on Malapii with respect to the 2001 and 2002 conduct, PSR convictions. Am I wrong in remembering that maybe your colleague at the table there was involved in obtaining the wiretap back in 2001 to 2002? So your suggestion somehow that this just like, oh, all of a sudden we believed, or am I getting that wrong? You're correct. My colleague here was involved. So why did you just make the argument that you did then? Because it seems to me, or at least, I mean, look, the problem I think the government has here is that every explanation you try to come forward with is just going to be met with a lot of skepticism. Fairly. So why wouldn't we, in light of everything that happened before, why wouldn't we assume the worst, basically, especially given that your colleague was there and was involved, certainly knew about those wiretaps? You've just presented an argument as though, oh, well, you know, we've forgotten all about it, but we doubled our efforts and, oh, look, look what turned up. And I guess I'm just, I'm a little skeptical of that presentation. And I, and I don't, and I don't mean to be flippant about it at all. I think that in the context of the trial with all of the other discovery problems going on, focused primarily on John Tai, but, but many others, that that was something that, and this is outside of the record, but I've certainly talked to, to my co-counsel here and asked the very question Your Honor asked. And I reflected that in the government's responses, it was precisely that we have, we, the government, have tried to catch anything that we have dropped. I am not certainly arguing that the government wasn't aware of it. As you correctly pointed out, co-counsel was at 2001 and 2002 investigation. And I agree, as we say in our brief, it would have been the better practice to turn it over before the first trial. There's no, we're not, we're not standing up here saying that it was correct of us to have done that. But ultimately, that, in our view, was not a giglio violation. Because it was not material, largely for the reason that Malapiai didn't testify at There was a lot of other impeachment information out there as to Malapiai, even if he did testify, that was the basis for the cumulative argument. But really, the more important one is that in the absence of his testimony, there was nothing, there's no way in which those wiretap, 2001-2002 wiretaps, could have been used. Because they relate to a, just a totally different case? Because you, you heard your opponent say that, no, no, no, if we had had those tapes before the first trial, we would have done everything different. And not just because we wanted to impeach the person whose name I'm not going to be able to pronounce. But, you know, it would have revealed this other stuff that we could have put to good use. And I take it your position is that, no, that can't be true because the wiretaps were related to something totally different? Is that the reason? No, not precisely. There are two parts to the answer. One is, there was already a lot of Malapiai 2001-2002 impeachment available to the defendants. And it is telling that at no point in this litigation, either below or on the ground, did we get information from the wiretaps and said, this is what we would have used. This is that crucial stuff that we didn't get in the earlier impeachment that would have allowed us to recraft our case. That's point one. Point two is, we've got a retrial here. We've got a retrial where Malapiai testifies. We've got a retrial where the same case agents testify that in the reply brief the defendant suggests, well, I could have at least, you know, impeached or sought to ask those case agents. Well, those case agents and Malapiai testify at trial number two, the retrial, and the wiretaps are not used at all. So there's absolutely nothing to suggest that they would have been used in round one because they were not used in round two. I think that's very telling evidence that they're, the idea that some alternative use of them would have played out much differently. Well, in fact, we have sort of a controlled experiment where they did not play out any differently. But we've got a different set of facts and we would have had had something happened in a different way. So you make the argument and I'm not suggesting there's anything improper about making it, but it's pretty hard to go back and unring the bell. We've had a trial, then we had the delay, then we had the second trial. Who knows what would have been changed. Counsel argues that it would have been different. He would have had a different approach had he known it earlier. But what we have to decide, I think, is based on this record, what was the error, if there was an error. What this court has to decide on de novo review specific to the MALA-PI, the sixth motion to dismiss, is whether the government's disclosure at the time that it did was so shockingly outrageous as to violate the universal sense of justice. That's the specific question as to the MALA-PI recordings. Now, again, I'm not up here to defend how the government has made a lot of mistakes in this case, but the defendant has not pointed to a particular case that says this type of a discovery error, it satisfies that high standard. And I also don't want to leave the impression that the government has sort of washed its hand and walked away from this case. In the aftermath of the case, we've had the U.S. Attorney's Office's conducted trainings. The National Criminal Discovery Coordinator from the Office of the Deputy Attorney General's Office came out and did trainings for the prosecutors and for the investigative agents. As I believe reflected in our brief, the lead AUSA in this case is no longer with the department. So nothing happened to him, I take it? The OPR just dropped the investigation when he left the department? I have to be careful about what I can say because of Privacy Act considerations, but when he left the department, OPR then concluded its investigation. He was no longer a part of the government and it did not have reach over him to then reach a conclusion about him. Well, you're about out of time, but let me just maybe make a comment less a question, or maybe it's a question. I guess what you'll appreciate from our standpoint is somewhat frustrating or unsatisfying about this case, is that because the district court didn't carry over the sanctions that imposed from the first trial to the second trial, what's frustrating here is that what we're left with is basically that the I won't say got caught, because I'm not going to say that any of this was deliberate, but basically serious breaches occurred. They come to light and then basically because there's a retrial, there's no real penalty. And I guess that's maybe that was within the judge's discretion to make that call. But you have to understand how frustrating that is from our standpoint. When it doesn't come to light, the government gets away with it. When it does come to light, then it's like, oh, well, no ultimate sanction is imposed here. And that's part of the reason why perhaps we keep seeing problems like this occur over and over and over again. May I briefly respond, knowing I'm out of time, certainly? Yeah. I think that's absolutely a fair concern of the courts. It's certainly one that Judge Kaczynski identified in his denial of bonkery hearing in the Olson case. But here's why I don't think it's accurate in this case. The government here went to trial twice against 10 different defendants and walked away with two convictions. Now, this is not a boo-hoo government, but we only go to trial when we, and in fact only indict individuals, when we believe we have evidence that establishes beyond a reasonable doubt that those individuals have committed the crimes with which they have been indicted and charged. Now, because of the government's poor handling, we walk out with 20%, with two of essentially the 10 defendants. There are four acquittals in trial number one. There are, Mr. Toiolo is acquitted on all counts but for one, and then he is convicted in the second trial, but three others are then, well, hung jury and then ultimately the government dismisses. There are real consequences here. That's simply to say, I agree that the government here doesn't deserve a pass, but ultimately, this is not a case that the government walks away from washing its hands having treated it as a victory. Okay, all right. I want to ask you one other question. I'm not sure I should or not, but it's now been disclosed to us and I suppose there's a continuing investigation going on, not of the U.S. Attorney's Office, but of investigations. Is there some reason why we need to disclose what we have before us? If Your Honor is referring to the letter that I submitted to the court about a week ago, no, there's no reason to postpone. In the backdrop of this case, with all of the considerations about disclosure and government misconduct, I felt it was appropriate to disclose the fact of an investigation of a case agent. That investigation has absolutely nothing to do with this case, but out of the proverbial abundance of caution, I think you are wise in doing it, but we just want to make sure that we know now about it, but we know also that it doesn't involve, we can go ahead and make a decision on this case. Yes, Your Honor. Thank you very much. Let's give counsel a minute for rebuttal. Your Honor, because there was a retrial, the government had a chance to do a do-over and it's shown, you know, during his second trial, he was convicted because you are correct. All the sanctions that happened in the first trial were not known to the jury in the second trial, so they had a chance to do a do-over. They did it a lot better, but they only ended up with only one conviction. Same thing with the first trial. They only got one conviction, and as the Chaplain Court mentioned and the Aguilar District Court, the government should only have one chance. They should do it right, and as the Olson dissent mentioned, there is an epidemic of Brady violations abroad in the land, and the District Court judges need to stop it, and if they don't, Your Honor will be able to do it. Are there any additional questions? I take it that you are not asking for another trial. Our first position is that unfortunately we would have to do a third trial, but it would have to be with the exclusion of the Malapai testimony and exhibits, because that evidence based upon the jury note in the first and second trial were crucial, and if you're going to fashion a remedy consistent with the violation, that would be the exclusion of the Malapai attempt. And one last thing, Your Honor. I thought I wanted to make sure that's what you're doing. I thought perhaps you just wanted a dismissal of the of the entire indictment because of what occurred, but you also, as a secondary one, you're also asking for a third trial. I understand the preference, but are you also holding that open? Is that something we have to rule on? Although I do not relish the thought of a third trial, if that is the best that Mr. Toilolo can do in order to protect his constitutional rights, we will do a third trial. Did you move for a new trial? No, we did not, Your Honor. So that one has been waived, so we only have a forest just setting aside the entire indictment because of misconduct. I'm not really sure if that's the case, because in our appeal, you know, we did ask for the alternate forms of release, and we did appeal those orders that we are contesting, so it's only the form of relief that would be different. So the only form of relief we will have the forest is setting aside the indictment because of misconduct. That is vacating and remanding for the judge to do it. That's the only thing you're really asking us for? Under what you've presented in your briefs. Yes, Your Honor, the alternate remedy we're asking for is the remand in a new trial. Okay, thank you. Thank you very much. Case just
judges: Wallace, Farris, Watford